UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

Austin Robert Turk,

                          Plaintiff,

        v.

Commissioner of Social Security,

                          Defendant.

**Decision and Order**

18-CV-6943 HBS
(Consent)

---

## I. INTRODUCTION

The parties have consented to this Court's jurisdiction under 28 U.S.C. § 636(c). The Court has reviewed the Certified Administrative Record in this case (Dkt. No. 8, pages hereafter cited in brackets), and familiarity is presumed. This case comes before the Court on cross-motions for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Dkt. Nos. 10, 11.) In short, plaintiff is challenging the final decision of the Commissioner of Social Security (the "Commissioner") that he was not entitled to Supplemental Security Income under Title XVI of the Social Security Act.[1] The Court has deemed the motions submitted on papers under Rule 78(b).

## II. DISCUSSION

"The scope of review of a disability determination . . . involves two levels of inquiry. We must first decide whether HHS applied the correct legal principles in making the determination. We must then decide whether the determination is supported by substantial evidence." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987) (internal quotation marks and citations omitted). When a district court reviews a denial of benefits, the Commissioner's findings as to any fact, if supported by substantial evidence, shall be conclusive. 42 U.S.C. § 405(g). Substantial evidence is defined as

---

[1] Plaintiff was a minor under 18 years of age when he filed his claim on February 17, 2015.

"'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Tejada v. Apfel*, 167 F.3d 770, 773-74 (2d Cir. 1999).

The substantial evidence standard applies to both findings on basic evidentiary facts, and to inferences and conclusions drawn from the facts. *Stupakevich v. Chater*, 907 F. Supp. 632, 637 (E.D.N.Y. 1995); *Smith v. Shalala*, 856 F. Supp. 118, 121 (E.D.N.Y. 1994). When reviewing a Commissioner's decision, the court must determine whether "the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner. *Winkelsas v. Apfel*, No. 99-CV-0098H, 2000 WL 575513, at *2 (W.D.N.Y. Feb. 14, 2000). In assessing the substantiality of evidence, the Court must consider evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *Briggs v. Callahan*, 139 F.3d 606, 608 (8th Cir. 1998). The Court may not reverse the Commissioner merely because substantial evidence would have supported the opposite conclusion. *Id.*

Individuals under 18 years old are considered disabled when the individual "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(C)(i). There is a three-step process that is used to determine whether a child is disabled under the Social Security Act. *See* 20 C.F.R. § 416.924.

The first step requires the Administrative Law Judge ("ALJ") to determine whether the child is engaged in "substantial gainful activity." *See* 20 C.F.R. § 416.924. The second step requires the ALJ to determine whether the child has any severe impairment, defined as anything that causes

"more than minimal functional limitations." *Id.* Finally, the ALJ determines whether the child's impairment or combination of impairments meets, medically equals, or functionally equals the severity of a listed impairment. *Id.* If the ALJ finds that the child's impairment or combination of impairments meets or equals a listing, the child is considered disabled. 20 C.F.R. §§ 416.924(d)(1).

Alternatively, if the ALJ determines that the child's impairment or combination of impairments does not meet or medically equal a listing, the ALJ then must assess functional equivalence to a listing in terms of six domains:

1. Acquiring and using information;

2. Attending and completing tasks;

3. Interacting and relating with others;

4. Moving about and manipulating objects;

5. Caring for yourself; and

6. Health and physical well-being.

20 C.F.R. § 416.926(a),(b)(1). A child is classified as disabled if the child has a "marked" limitation in any two domains of functioning or an "extreme" limitation in any one domain. 20 C.F.R. §§ 416.926a(d). A "marked" limitation is when the impairment or cumulative effect of the impairments "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). An "extreme" limitation "interferes very seriously" with that ability. 20 C.F.R. § 416.926a(e)(3)(i).

Of the various issues that plaintiff has raised, the ALJ's assessment of treating optometrist Dr. Thomas Andolina[2] draws the Court's immediate attention. The ALJ found that plaintiff had the

---

[2] Given the date of the claim and the applicable regulation for evaluating opinion evidence (20 C.F.R. § 416.927), Dr. Andolina is an acceptable medical source under 20 C.F.R. § 416.902(a)(3).

severe impairment of a vision impairment. [39.] The ALJ concluded that plaintiff had the RFC for work at all exertional levels but with nonexertional limitations pertaining to visual acuity and left peripheral vision. [45.] In explaining the determination of the RFC, the ALJ included the following paragraph, the only paragraph that addresses clinical records from the Eye Care Center where Dr. Andolina worked:

> The claimant admitted at the Eye Care Center that he had stable near and distant vision in both eyes despite them getting itchy, and that he felt that his glasses were working well (Ex. 2F at 2). Notes of the claimant's vision being stable date from before the claimant's application date when he was a child and continued to regular intervals afterwards (Id. at 2, 5; Ex. 16F at 1; Ex . l 7F at 2). Whereas he has been visually impaired, the claimant's eye has not deteriorated since his application date (Ex. 4F at 15). Also, despite his visual impairments, the claimant had just finished college in May 2017 and wanted to eventually attend higher education (Ex. 19F at 3).

[45–46.] Plaintiff argues that the ALJ did not give Dr. Andolina and any opinions of his an appropriate amount of attention:

> In the case at hand, the Plaintiff was not represented at the hearing level. T. 87. The record reflects that the Plaintiff followed with Thomas Andolina, O.D. for his optic nerve atrophy and myopia, noting that Plaintiff's eyesight remained stable albeit limited. T. 279-81, 356-58, 359-61. The record does not include any opinion from Dr. Andolina, however, only the treatment notes containing his findings regarding the Plaintiff's vision. The ALJ is responsible for obtaining an informed opinion regarding the Plaintiff's capabilities. *Dennis*, 195 F. Supp. 3d at 474. Treatment notes containing complex medical findings do not allow an ALJ to render a common sense judgment about the Plaintiff's functional capacity. *Perkins v. Berryhill*, 2018 WL 3372964 at *4 (W.D.N.Y. 2018).

(Dkt. No. 10-1 at 10.) The Commissioner responds that the ALJ had enough information from Dr. Andolina's clinical notes and from three consultative examinations to craft an RFC that was consistent with the overall record.

The Commissioner might eventually have the better argument on substantive grounds, but on procedural grounds, plaintiff has the better argument for now. "Social Security Administration regulations, as well as our precedent, mandate specific procedures that an ALJ must follow in

determining the appropriate weight to assign a treating physician's opinion. First, the ALJ must decide whether the opinion is entitled to controlling weight." *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019). "According to this [treating physician] rule, the opinion of a claimant's treating physician as to the nature and severity of the impairment is given controlling weight so long as it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record." *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (internal quotation and editorial marks and citations omitted). "Otherwise, the ALJ must proceed to step two and determine how much weight, if any, to give the opinion. At step two, the ALJ must explicitly consider the following factors derived from our decision in [*Burgess*]: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist. At both steps one and two, the ALJ must give good reasons in its notice of determination or decision for the weight it gives the treating source's medical opinion. Moreover, the failure to explicitly apply the *Burgess* factors when assigning weight at step two is a procedural error, and unless the ALJ has otherwise provided good reasons for its weight assignment, we will be unable to conclude that the error was harmless and will consequently remand for the ALJ to comprehensively set forth its reasons. If, however, a searching review of the record assures us that the substance of the treating physician rule was not traversed, we will affirm." *Ferraro v. Saul*, ___ Fed. Appx. ___, No. 18-3684, 2020 WL 1189399, at *1 (2d Cir. Mar. 12, 2020) (summary order) (internal quotation and editorial marks and citations omitted). The ALJ here assessed Dr. Andolina in ways nearly identical to the ways that the Second Circuit considered deficient just days ago in *Ferraro*. The ALJ did not explicitly consider the frequency, length, nature, and extent of treatment that either Dr. Andolina himself or his office as a unit provided to plaintiff.

5

The ALJ did not consider Dr. Andolina's qualifications as a specialist. As for amount of evidence and consistency, the ALJ did not acknowledge Dr. Andolina by name anywhere in the decision and did not give "good reasons" for failing to assign any weight to any opinions or medical source statements in the clinical notes. Additionally, while the ALJ was diligent in obtaining Dr. Andolina's clinical records, no good reasons appear in the opinion explaining why the only treating physician in the record, for the severe impairment determined, was not approached for a more explicit opinion or medical source statement.

Remand will be necessary to ensure compliance with *Burgess*. In ordering remand, the Court takes no position on whether or how a more developed *Burgess* analysis for Dr. Andolina will affect the RFC that the ALJ previously determined. The Court also will not address any other issues that the parties have raised. Upon remand, the Commissioner is free to review those issues as might be appropriate.

### III. CONCLUSION

For the above reasons, the Court denies the Commissioner's motion (Dkt. No. 11). The Court grants plaintiff's cross-motion (Dkt. No. 10) in part to vacate the Commissioner's final decision and to remand the matter for further proceedings consistent with this Decision and Order. The Court denies plaintiff's cross-motion to the extent that it seeks any other relief.

The Clerk of the Court is directed to close the case.

SO ORDERED.

　　　　　　　　　　　　　　　　__/s Hugh B. Scott_____
　　　　　　　　　　　　　　　　Hon. Hugh B. Scott
　　　　　　　　　　　　　　　　United States Magistrate Judge

DATED: March 20, 2020